**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-1403NI

_____

| | |
|---|---|
| Paul J. Dubach, | * |
| | * |
| Appellant, | * |
| | * |
| | * On Appeal from the United |
| v. | * States District Court |
| | * for the Northern District |
| | * of Iowa. |
| George H. Weitzel; Thomas A. Welter; | * |
| and Iowa Wisconsin Capital, Inc., | * |
| | * |
| Appellees. | * |

_____

Submitted: October 23, 1997

Filed: February 3, 1998

_____

Before RICHARD S. ARNOLD, Chief Judge, LOKEN and HANSEN, Circuit Judges.

_____

RICHARD S. ARNOLD, Chief Judge.

Paul Dubach brought this suit against George Weitzel and Thomas Welter for converting to their own use a certificate of deposit ("CD") belonging to the parties' jointly owned corporation. The District Court[1] dismissed Dubach's action:  the federal

---

[1]The Hon. Edward J. McManus, United States District Judge for the Northern District of Iowa.

securities law claims because the CD was not a security, and the shareholder derivative claims because no jurisdictional basis remained. We affirm.

I.

Dubach, Weitzel, and Welter were shareholders in a corporation called Iowa Wisconsin Capital ("IWC"). IWC's assets included a $100,000 CD purchased from Dupaco Credit Union. In 1994, as a result of separate litigation between the parties, Dubach discovered that Weitzel and Welter had pledged the CD as collateral for personal loans, in the amounts of $50,000 to each of them.

Dubach brought suit in federal court, alleging that Weitzel's and Welter's conversion and encumbrance of the CD constituted violations of the Securities Act of 1933, 15 U.S.C. §§ 77a - 77aa (1994), the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a - 78hh-1 (1994), and the Investment Company Act of 1940, 15 U.S.C. §§ 80a-1 - 80a-52 (1994).[2] He also brought shareholder derivative claims on behalf of IWC, alleging wrongful conversion and negligent and fraudulent misrepresentation. Though the complaint alleged both federal question and diversity jurisdiction, 28 U.S.C. §§ 1331, 1332 (1994), it failed properly to state the grounds for diversity jurisdiction, using the word "resident" instead of "citizen." The shareholder derivative claims were characterized as pendent.

The appellees moved to dismiss Dubach's complaint, arguing that federal securities laws did not apply to the CD and that the shareholder derivative claims had no independent basis for federal jurisdiction. In response, Dubach reasserted his federal securities law claims. The District Court dismissed the complaint.

---

[2]The complaint also invokes 17 C.F.R. § 240.15c-3-1. However, the appellant's brief now disclaims that basis for relief. Appellant's Br. at 13.

II.

The District Court correctly determined that the CD was not a security for the purposes of the federal securities laws. The Supreme Court's decision in Marine Bank v. Weaver, 455 U.S. 551 (1982), is instructive. In that case, a CD was pledged by its holders to guarantee a bank's loan to another party, for use as working capital. When the loan instead was applied towards past obligations that the third party owed the bank, the holders of the CD sued the bank under the antifraud provisions of the Securities Exchange Act, claiming that the CD was a security under that law. The Court's holding turned on its assessment of the investor's risk of loss:

> This certificate of deposit was issued by a federally regulated bank which is subject to the comprehensive set of regulations governing the banking industry. Deposits in federally regulated banks are protected by the reserve, reporting, and inspection requirements of the federal banking laws; advertising relating to the interest paid on deposits is also regulated. In addition, deposits are insured by the Federal Deposit Insurance Corporation. . . . It is unnecessary to subject issuers of bank certificates of deposit to liability under the antifraud provisions of the federal securities laws since the holders of bank certificates of deposit are abundantly protected under the federal banking laws. We therefore hold that [this] certificate of deposit . . . is not a security.

Id. at 558-59 (footnotes and citations omitted).

The Court then went on to examine whether the agreement pledging the CD in exchange for consideration could be considered a security, though the CD itself was not. The Court held that the instrument did not fall within the definition of a security because it involved only private and unique interests, in contrast to "[t]he unusual instruments found to constitute securities in prior cases[, which] involved offers to a number of potential investors, not a private transaction." Id. at 559-60. The Court did not entirely foreclose the possibility that some CDs, under particular circumstances,

would fall within the governance of federal securities laws. Rather, "each transaction must be analyzed and evaluated on the basis of the content of the instruments in question, the purposes intended to be served, and the factual setting as a whole." Id. at 560 n.11.

Credit unions are regulated by law, see 12 U.S.C. §§ 1751-1795k (1994); Iowa Code §§ 533.1 - 533.67 (1997), and the reasoning in Marine Bank disposes of Dubach's argument that the CD was a security. The CD's issuance was a conventional commercial transaction. To apply federal securities law would "double-coat" the transaction. Compare Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 756 F.2d 230 (2d Cir. 1985) (where customers relied on skill and financial stability of brokerage firm and were not protected from risk of brokerage's failure or fraud, application of federal securities law was not "double coating").

Further, the pledge of the CD did not alter its nature. Dubach urges that even if the CD as issued were not a security, Weitzel and Welter "transformed the [$100,000] CD into a security by means of the various transactions which they formulated with the Dupaco Credit Union in order to allow each of them individually to receive the interest on the CD." Compl. at 5. The Supreme Court, in Marine Bank, rejected a similar argument: "We reject [the proposition] . . . that the certificate of deposit was somehow transformed into a security when it was pledged, even though it was not a security when purchased." Marine Bank, 455 U.S. at 559 n.9.

Finally, neither the pledge of the CD nor the resulting issuance of promissory notes was a transaction requiring the investor protections of federal securities laws. Courts have extended these laws to cover investing schemes that, though constructed of banking transactions, elude the consumer protections of banking law. For instance, where a broker engaged in excessive buying and selling of CDs in order to maximize his commissions, this Court held that the CDs should be treated as securities to the extent that banking laws did not insure the investor's resultant losses. Olson v. E.F.

-4-

Hutton & Co., 957 F.2d 622 (8th Cir. 1992). See also Safeway Portland Employees' Fed. Credit Union v. C.H. Wagner & Co., 501 F.2d 1120 (9th Cir. 1974) (where a brokerage used a commission-based interest premium to induce investors to buy CDs, the resulting shift of risk to those investors merited the treatment of the CD sales as securities transactions). In contrast, Dupaco's loan to Weitzel and Welter, using the CD as collateral, involved direct risk to no investors, the transaction being a private one between the insured credit union and the appellees as individuals. Though this transaction may have jeopardized existing investments in IWC, "Congress, in enacting the securities laws, did not intend to provide a broad federal remedy for all fraud." Marine Bank, 455 U.S. at 556 (citations omitted). We hold that neither the pledge nor the issuance of these promissory notes can be characterized as a securities transaction.

## III.

We now address whether the District Court should consider the remaining shareholder derivative claims. In his Complaint, Resistance to Motion to Dismiss, and Brief in Support of Plaintiff's Resistance to Motion to Dismiss, Dubach consistently and exclusively referred to the shareholder derivative claims as pendent claims. Though the complaint mentioned diversity jurisdiction, it improperly used the word "resident" instead of "citizen" to plead such jurisdiction. See 28 U.S.C. § 1332 (1994). As the District Court noted, when Dubach received notice of this procedural defect from the appellees' motion to dismiss, he reiterated his "reliance upon the federal nature of his claims for jurisdiction." Order at 6. He did not seek to amend the complaint, either to allege citizenship properly or to recharacterize the pendent claims as diversity-based claims.

Plaintiff asks us to allow him to amend the Complaint now to allege diversity jurisdiction properly. This Court has discretion to allow amendment on appeal. 28 U.S.C. § 1653 (1994). However, under these circumstances -- where Dubach had notice of a jurisdictional defect in his claims, had the opportunity to correct it in the

District Court, but failed to do so -- it would be unfair to the appellees to allow amendment at this late stage. At the oral argument we noted that Section 1653 allows "[d]efective allegations of jurisdiction [to] . . . be amended, upon terms, in the . . . appellate courts," and suggested that in these circumstances plaintiffs might be allowed to amend if they would undertake to pay the fees and expenses that defendants had had to incur because of plaintiffs' delay in attempting to correct their pleadings. This offer was rejected.

The shareholder derivative claims thus depend on the federal securities law claims for federal jurisdiction, and may not be heard now that the latter have been properly dismissed on the pleadings. This action is without prejudice to the right of the plaintiff to litigate his state-law claims in a state court of competent jurisdiction.

We therefore affirm the judgment of the District Court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.