# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3526
No. 13-1245

_____

Gary Reece, on behalf of himself and all other similarly situated Arkansas residents

*Plaintiff - Appellant*

v.

Bank of New York Mellon, as Trustee for CIT Mortgage Loan Trust, 2007-1

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 14, 2014
Filed: July 23, 2014

_____

Before RILEY, Chief Judge, WOLLMAN and SHEPHERD, Circuit Judges.

_____

RILEY, Chief Judge.

After Gary Reece received a non-judicial foreclosure notice, he obtained a temporary restraining order (TRO) against Bank of New York, Mellon (Mellon) in Arkansas state court. Over a year later, he amended his TRO complaint, seeking to represent a class of Arkansas homeowners facing non-judicial foreclosures by Mellon. Mellon filed a notice of removal in federal court within thirty days of the

amended complaint's filing. Reece moved to remand. The district court denied Reece's motion to remand and then granted Mellon's motion to dismiss. After Reece timely appealed those orders, the district court awarded Mellon $836.82 in costs despite Mellon's failure to file a verified affidavit substantiating the costs. Reece again appealed. Considering Reece's consolidated appeals under 28 U.S.C. § 1291, we affirm in part and reverse in part.

## I.    BACKGROUND

After receiving notice that his home in Little Rock, Arkansas, would be auctioned off pursuant to a non-judicial foreclosure, Reece filed a complaint in Arkansas state court on October 15, 2010. The complaint sought a TRO permitting Reece "to stay in the home" and asserted Reece "will likely succeed in having the sale cancelled." The Arkansas state court granted Reece's request and "temporarily enjoined" Mellon "from conducting a sale of [Reece's] property." A hearing on February 22, 2011, led the Arkansas state court in its February 25, 2011, order to "question[] whether [Mellon] has demonstrated a substantial likelihood of prevailing on the merits of the case," and the court "stayed" the TRO "until the next hearing on the merits of this case." The parties delayed two hearings by mutual agreement until January 18, 2012, when Reece filed an amended complaint converting his case into a class action.

On February 10, 2012, Mellon filed a notice of removal in the U.S. District Court for the Eastern District of Arkansas. The notice invoked diversity and federal question jurisdiction. Reece moved to remand, asserting (1) Mellon filed its removal notice too late to comply with 28 U.S.C. § 1446, and (2) the district court lacked original jurisdiction over Mellon's federal question defenses to Reece's state law claims. Cf. Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152 (1908) (holding a federal law defense to a state law claim does not confer federal question jurisdiction). Mellon moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

On September 20, 2012, the district court filed a two-page order disposing of the case. Without mentioning 28 U.S.C. § 1446's one-year time limit or 28 U.S.C. § 1453(b)'s exemption of class actions from that limit, the district court denied Reece's motion to remand "because the class action complaint meets the requirements for federal diversity jurisdiction as specified in 28 U.S.C. § 1332." Then the district court granted Mellon's motion to dismiss, relying on an earlier decision in Rivera v. JPMorgan Chase Bank, 470 B.R. 829 (E.D. Ark. 2012), which "held that any national bank authorized by Congress to engage in the business of banking throughout the United States[] is authorized to do business, including foreclosures, in the state of Arkansas."

After the district court entered judgment against Reece on September 20, 2012, Reece timely appealed to this court. On January 2, 2013, the district court awarded Mellon $836.82 from Reece without mentioning Mellon's failure to file an affidavit verifying the costs were necessary and reasonable. Cf. 28 U.S.C. § 1924. Reece also appeals the district court's grant of Mellon's motion for costs.

II. **DISCUSSION**

A. **Jurisdiction**

"'On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes.'" Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (quoting Great S. Fire Proof Hotel Co. v. Jones, 177 U.S. 449, 453 (1900)). The jurisdictional question in this case is more complex than revealed by the district court's analysis.[1] We consider

---

[1]As Judge Joseph William Woodrough, one of the longest serving federal jurists in U.S. history, wrote for our court many years ago, "We deem it to be fully established that it is the duty of the District Courts to assure themselves of the federal jurisdiction in every case before them, and consent given by [the parties] to the exercise of jurisdiction upon subject-matter not within the jurisdiction is of no avail." Miller v. First Serv. Corp., 84 F.2d 680, 683 (8th Cir. 1936). When, as in this case,

the question de novo, see Wallace v. Wallace, 736 F.3d 764, 766 (8th Cir. 2013), and conclude federal diversity jurisdiction extends to this case.

### 1. One-Year Removal Limit

Reece commenced this case on October 15, 2010, by filing a complaint in Arkansas state court. Ordinarily, 28 U.S.C. § 1446(b) gives a defendant thirty days to remove a complaint to federal court, but Reece only sought equitable relief (an injunction prohibiting Mellon's non-judicial foreclosure of his home), so Mellon was not obligated to remove to federal court within the thirty-day period. See, e.g., Knudson v. Sys. Painters, Inc., 634 F.3d 968, 974 (8th Cir. 2011) ("[S]ince [the] complaint did not *explicitly state* the amount in controversy, [the] complaint did not trigger the running of § 1446(b)'s thirty-day deadline." (emphasis added)).

As "the case stated by the initial pleading [was] not removable," Mellon was permitted to remove "within 30 days after rec[eiving] . . . a copy of an amended pleading, motion, order or other paper from which it [could] *first be ascertained* that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3) (emphasis added). But, according to Reece, Mellon also faced a bright-line time limit for filing the notice of removal:

---

a party questions federal jurisdiction, we are assisted when the district court explains its factual findings and legal conclusions in sufficient detail to facilitate appellate review. Cf. Fed. R. Civ. P. 52(a)(3). A district court's omission to do so may not preclude our review in every case, but we believe the risk is too significant for district courts to ignore. See, e.g., Chavez-Lavagnino v. Motivation Educ. Training, Inc., 714 F.3d 1055, 1057 (8th Cir. 2013) ("The district court . . . made no findings about where [one defendant] was a citizen at the time of filing, and in light of the competing inferences arising from [this defendant's] testimony and the pleadings filed by her counsel, we cannot resolve this factual question on appeal.").

> A case may not be removed under subsection (b)(3) on the basis of [diversity] jurisdiction . . . *more than 1 year* after commencement of the action.[2]

28 U.S.C. § 1446(c)(1) (emphasis added).

Mellon did not file its notice of removal until February 10, 2012, almost four months past the one-year limit in § 1446(c)(1). Mellon first attempts to circumvent the limit, which only applies to diversity jurisdiction, by invoking federal question jurisdiction. This attempt—predicated on the theory that foreclosure proceedings have been "completely preempted" by federal law—is unpersuasive. That nationally chartered banks must, incident to their authorization to make mortgage loans, have the ability to foreclose when the mortgagor defaults, see JPMorgan Chase Bank, N.A. v. Johnson, 719 F.3d 1010, 1017-18 (8th Cir. 2013), does not mean federal courts have original jurisdiction over foreclosures. To the contrary, federal regulations provide that "State laws on the . . . subject[]" of "[r]ights to collect debts" "are *not inconsistent* with the real estate lending powers of national banks and *apply to national banks*."[3]  12 C.F.R. § 34.4(b) (emphasis added). As the subject matter of Reece's suit was not completely preempted by federal law, the district court did not have federal question jurisdiction over Reece's exclusively state law claims. If § 1446(c)(1) applies to this case, the one-year limit would plainly preclude diversity removal.

---

[2]The bad faith exception, which permits later removal upon a finding by the district court "that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action," is not at issue. 28 U.S.C. § 1446(c)(1).

[3]The insurance-related exceptions at issue in Barnett Bank of Marion County, N.A. v. Nelson, Florida Insurance Commissioner, 517 U.S. 25 (1996), do not apply to this case.

## 2. Exception for Class Actions

Despite the district court not considering the issue, we conclude the § 1446(c)(1) one-year limit is inapplicable in this case based on 28 U.S.C. § 1453(b):

> A *class action* may be removed to a district court of the United States in accordance with section 1446 *(except that the 1-year limitation under section 1446(c)(1) shall not apply)*.

(Emphasis added).

Section 1453(a) defines the term "class action," by reference to § 1332(d)(1), as "*any civil action* filed under [Fed. R. Civ. P. 23] or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action," 28 U.S.C. § 1332(d)(1) (emphasis added). Reece's case plainly qualifies as a "class action" under § 1332(d)(1), so § 1453(b) exempts this case from § 1446(c)(1)'s one-year limit.

Reece's best counterargument is his theory that § 1453(b) applies solely to class actions under the Class Action Fairness Act of 2005 (CAFA), Pub. L. No. 109–2, 119 Stat. 4 (codified as amended in scattered sections of 28 U.S.C.), exceeding a higher amount in controversy: $5,000,000[4] rather than $75,000. See id. § 4, 119 Stat. at 9 (codified at 28 U.S.C. § 1332(d)(2)). Even if reading CAFA in isolation might support this theory, we are bound to consider the statutory text as a coherent whole. See, e.g., FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132-33 (2000). Read in context, "the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" Robinson v. Shell Oil Co., 519

---

[4]Although Mellon belatedly asserts that the amount in controversy exceeds $5,000,000, there is no such assertion in Mellon's notice of removal and no such finding in the district court's order.

U.S. 337, 340 (1997) (quoting United States v. Ron Pair Enters., Inc., 489 U.S. 235, 240 (1989)).

CAFA jurisdiction with more than $5,000,000 in controversy requires only *minimal* diversity, meaning "*any* member of a class of plaintiffs is a citizen of a State different from *any* defendant." 28 U.S.C. § 1332(d)(2)(A) (emphasis added). By contrast, if the parties to a class action are *completely* diverse (meaning *every* plaintiff is a citizen of a state different from *every* defendant), there is federal jurisdiction so long as one plaintiff's amount in controversy exceeds $75,000:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—
>
> (1) citizens of different States.

28 U.S.C. § 1332(a); see Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 549 (2005). In other words, a class action involving complete diversity may qualify for federal jurisdiction under § 1332(a), by showing at least one plaintiff has more than $75,000 at issue, or § 1332(d), by showing all plaintiffs together have more than $5,000,000 at issue. But a class action involving minimal diversity qualifies for federal jurisdiction only if the amount in controversy exceeds $5,000,000. See 28 U.S.C. § 1332(d).

Regardless of how federal jurisdiction over a class action arises, § 1453(b) unambiguously provides that the one-year removal limit in § 1446(c)(1) does not apply.[5] See 28 U.S.C. § 1453(b); Rolwing v. Nestle Holdings, Inc., 666 F.3d 1069,

---

[5]This straightforward textual conclusion is confirmed by CAFA's legislative history, to the extent such history is relevant. See, e.g., S. Rep. No. 109–14, at 49, 2005 U.S.C.C.A.N. 3, 45 ("The general removal provisions currently contained in Chapter 85 of Title 28 [(i.e., § 1332(a))] would continue to apply to class actions, except where they are inconsistent with the provisions of the Act.").

1071 (8th Cir. 2012), abrogated in part on other grounds by <u>Standard Fire Ins. Co. v. Knowles</u>, 568 U.S. ___, ___, 133 S. Ct. 1345, 1348 (2013). Any other reading of §§ 1332 and 1453 would thwart clear congressional intent by permitting plaintiffs to evade federal jurisdiction through clever gamesmanship: filing an individual complaint in state court, waiting a year, then transforming the original complaint into a class action by amendment, when it would be too late for a defendant, now facing a class action, to file a notice of removal. Mellon was not required to remove this "class action," 28 U.S.C. § 1332(d)(1), within one year of Reece's original complaint.

### 3. Citizenship of the Parties

While § 1453(b) resolves one jurisdictional difficulty, it reveals another. Because there is no basis to find more than $5,000,000 at stake, this case qualifies for federal diversity jurisdiction only if the amount in controversy exceeds $75,000 and "the matter . . . is between[] *citizens* of different States." 28 U.S.C. § 1332(a)(1) (emphasis added). Yet Mellon's removal notice merely specifies that Reece's amended complaint "allege[d] he is an individual *resident* of the State of Arkansas." (Emphasis added). When it comes to diversity jurisdiction, the words "resident" and "citizen" are not interchangeable. <u>See</u>, <u>e.g.</u>, <u>Dubach v. Weitzel</u>, 135 F.3d 590, 593 (8th Cir. 1998).

Despite our admonition "to be attentive to a satisfaction of jurisdictional requirements in all cases," <u>Sanders v. Clemco Indus.</u>, 823 F.2d 214, 216 (8th Cir. 1987), the district court summarily announced "[t]he class action complaint establishes diversity of *citizenship* by stating that Reece *and the entire plaintiff class* are *residents* of the state of Arkansas." (Emphasis added). This conclusion is doubly flawed. First, the citizenship of "the entire plaintiff class" has no bearing on the jurisdictional inquiry. Diversity jurisdiction in a class action depends solely on the citizenship of the *named* parties. <u>See</u> <u>Snyder v. Harris</u>, 394 U.S. 332, 340 (1969) ("[I]f one member of a class is of diverse citizenship from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court

even though all other members of the class are citizens of the same State as the defendant."). Reece is the only named plaintiff.

Second, it is simply incorrect to say Reece's Arkansas residency establishes Arkansas citizenship for the purpose of diversity jurisdiction. See Dale v. Weller, 956 F.2d 813, 815 (8th Cir. 1992); Sanders, 823 F.2d at 216. As Judge Richard S. Arnold wrote for our court in Dubach, "Though the" removal notice "mentioned diversity jurisdiction, it improperly used the word 'resident' instead of 'citizen' to plead such jurisdiction." Dubach, 135 F.3d at 593. For this reason, we could not affirm without looking beyond the district court's incomplete explanation, and we requested supplemental briefing from the parties.

Mellon's supplemental brief initially maintains the "notice of removal sufficiently asserted diversity of citizenship by alleging that this action 'is between citizens of different states.'" Setting aside the conclusory nature of Mellon's allegation, it is not enough for the parties to be diverse only at the *time of removal*. Nearly two centuries of precedent establish diversity of citizenship must also exist at the *time of commencement*. See, e.g., Conolly v. Taylor, 27 U.S. (2 Pet.) 556, 565 (1829) (Marshall, C.J.). "This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure." Grupo Dataflux v. Atlas Global Grp., L.P., 541 U.S. 567, 570-71 (2004) (footnote omitted). In Phoenix Ins. Co. v. Pechner, 95 U.S. 183, 186 (1877), for example, the Supreme Court deemed insufficient a "petition for removal" which "simply stated that the plaintiff is—that is to say, was at that date—a citizen of" a different state from the defendant.

As we said in a recent jurisdictional remand, "For a party to remove a case to federal court based on diversity jurisdiction, the parties must be diverse both when the plaintiff initiates the action in state court and when the defendant files the notice of removal in federal court." Chavez-Lavagnino, 714 F.3d at 1056. In this case, Mellon's notice of removal is defective because it fails to specify Reece's "*citizenship*

-9-

when the suit was commenced." Phoenix, 95 U.S. at 186 (emphasis added). The allegation that Reece was an Arkansas "resident" is inadequate. See, e.g., Dubach, 135 F.3d at 593. This is not a mere technicality: we have an independent obligation to ensure the party asking us to exercise jurisdiction has proved we have jurisdiction to exercise. See, e.g., Chavez-Lavagnino, 714 F.3d at 1057. In both common parlance and legal usage, "resident" and "citizen" have overlapping but distinct meanings. See, e.g., Black's Law Dictionary 1502 (10th ed. 2014) (explaining "a resident is not necessarily either a citizen or a domiciliary"); New Oxford American Dictionary 1485 (3d ed. 2010) (defining "resident" as "a person who lives somewhere permanently *or on a long-term basis*" (emphasis added)).

Citizenship requires permanence. The Fourteenth Amendment establishes that U.S. citizens are "citizens . . . of *the* State wherein they *reside*." U.S. Const. amend. XIV, § 1 (emphasis added). To "reside"—in contrast to the related and less precise word "resident"—means to "have one's *permanent home* in a particular place."[6] New Oxford American Dictionary, supra, 1485 (emphasis added); see also, e.g., Merriam-Webster's Collegiate Dictionary 1060 (11th ed. 2007) (defining "reside" as "to dwell permanently or continuously: occupy a place as one's legal domicile"). The Fourteenth Amendment's reference to "the" singular "State" further demonstrates one may reside in, and thus be a citizen of, only one state. By contrast, one may be a resident of multiple states in addition to the state of citizenship. Because of this

---

[6]Because "reside" is unambiguous, the notice of removal sufficiently pleads Reece's citizenship at the time of removal by alleging "the State of Arkansas [is] where the plaintiff *resides*." (Emphasis added). The unambiguous meaning of "reside" also reveals that Kern v. Standard Oil Co., 228 F.2d 699 (8th Cir. 1956), is not—as Mellon incorrectly claims—"at odds" with Dubach, Dale, and Sanders. The panel in Kern may have used "resident" imprecisely in dicta, but the complaint at issue in that case alleged the defendant "*resides . . .* in the city of Minneapolis." Id. at 700, 701 (emphasis added). Based on this allegation, it is no surprise the Kern panel correctly observed that allegation, if true, meant the defendant was "a citizen of Minnesota." Id. at 701.

ambiguity in the word "resident"—as compared to "citizen" and the unambiguous "reside"—we cannot satisfy ourselves that diversity jurisdiction is proper based solely on an allegation a party is (or was) a "resident" of a particular state. See Dubach, 135 F.3d at 593; Dale, 956 F.2d at 815; Sanders, 823 F.2d at 216.

In addition to submitting, incorrectly, that there was no defect in the notice of removal, Mellon alternatively "requests that the Court deem the notice of removal amended" to state Reece's citizenship. In his supplemental brief, Reece submits he was an Arkansas citizen both when the case commenced and when Mellon removed to federal court. In light of Reece's submission, we exercise our discretion to deem the defective pleadings properly amended. See 28 U.S.C. § 1653; Singleton v. Wulff, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases."); Mathews v. Diaz, 426 U.S. 67, 75 & n.9 (1976) (recognizing "the statutory purpose of avoiding needless sacrifice to defective pleading" and "treat[ing] the pleadings as properly supplemented"); Barclay Square Props. v. Midw. Fed. Sav. & Loan Ass'n of Minneapolis, 893 F.2d 968, 969 (8th Cir. 1990) ("This court may treat the complaint as amended to properly allege diversity of citizenship and address the merits of the appeal if the record establishes that diversity actually existed in the district court.").

Because (1) the amount in controversy exceeds $75,000,[7] (2) the only named plaintiff (Reece) was a citizen of Arkansas at the time of commencement and removal, and (3) no defendant is a citizen of Arkansas, this class action falls within the federal courts' diversity jurisdiction under 28 U.S.C. § 1332(a).

## B.    Dismissal

Reece's challenge to the district court's dismissal of his complaint under Rule 12(b)(6) is foreclosed by our decision in JPMorgan, 719 F.3d at 1018.  See Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011) (en banc).  In JPMorgan, we held that federal law may authorize a national bank "to do business in Arkansas" and "avail itself of the benefit of" the non-judicial foreclosure procedures which Reece challenges.  JPMorgan, 719 F.3d at 1018.  Following JPMorgan, our de novo review leads to the inescapable conclusion that the district court properly dismissed Reece's case—which alleges Mellon is not authorized to use Arkansas' non-judicial foreclosure procedures—for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6); see, e.g., Dannix Painting, LLC v. Sherwin-Williams Co., 732 F.3d 902, 905 (8th Cir. 2013) (reviewing de novo a Rule 12(b)(6) dismissal).

---

[7]In his reply to Mellon's opposition to his motion to remand, Reece admitted "[t]he amount in controversy for diversity of citizenship jurisdiction under § 1332 *was . . . satisfied* at the time [he] filed his original Complaint on October 15, 2010." (Emphasis added).  Having agreed with Mellon that "the underlying secured debt exceeds $139,000, which, in turn, exceeds the $75,000 amount in controversy," Reece cannot change his theory on appeal and fault the district court for relying on his earlier admission.  In any event, we detect no clear error in the district court's finding "the matter in controversy . . . was of sufficient dignity to give this Court jurisdiction," Bank of U.S. v. Daniel, 37 U.S. (12 Pet.) 32, 51 (1838); see, e.g., Usery v. Anadarko Petroleum Corp., 606 F.3d 1017, 1020 (8th Cir. 2010).

## C.    Costs

Turning to Reece's final challenge, we conclude the district court legally erred in awarding costs to Mellon.  See, e.g., Winter v. Novartis Pharm. Corp., 739 F.3d 405, 411 (8th Cir. 2014) (reviewing "the legal issues about the award of costs" de novo, but reviewing "the actual award of costs" for abuse of discretion).

Before a district court is permitted to award costs to a prevailing party, the prevailing party *must* submit an affidavit meeting non-discretionary statutory requirements:

> Before any bill of costs is taxed, the party claiming any item of cost or disbursement *shall attach thereto an affidavit*, made by himself or by his duly authorized attorney or agent having knowledge of the facts, *that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed*.

28 U.S.C. § 1924 (emphasis added).

Mellon provided no such affidavit, instead supplying the court with an unverified motion which failed to specify each item claimed was "correct," "necessarily incurred," and related to services "actually and necessarily performed." Id.  Although Mellon also submitted a bill of costs form (AO 133) containing a standardized declaration "under penalty of perjury that the foregoing costs are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed," Mellon's counsel inexplicably failed to sign this declaration.

-13-

Because the statute leaves no room for discretion, Mellon is prohibited from receiving an award of costs.[8] See, e.g., United States v. Hiland, 909 F.2d 1114, 1142 (8th Cir. 1990) (reversing an award of costs because "28 U.S.C. § 1924 *requires* that cost items *be verified by affidavit*" and the prevailing party "did not file a verified bill of costs" (emphasis added)); accord, e.g., Centennial Archaeology, Inc. v. AECOM, Inc., 688 F.3d 673, 681 (10th Cir. 2012) ("[A] party is *not* entitled to recover a cost *without submitting an affidavit* that it was 'necessarily incurred.'" (emphasis added) (quoting 28 U.S.C. § 1924)).

## III.    CONCLUSION

We affirm the denial of Reece's motion to remand and the dismissal of his case. We reverse the award of costs and remand with instructions to deny Mellon's motion for costs.[9]

———————————————

———————————————

[8]Mellon cannot cure the defect on remand because any affidavit verifying the bill of costs now would be unreasonable—well over a year late—and thus untimely. See, e.g., Nelson v. Darragh Co., 120 F.R.D. 517, 519 (W.D. Ark. 1988) (M.S. Arnold, J.) (explaining that because Fed. R. Civ. P. 54(d)(1) sets no bright-line time limit, bills of costs must be "submitted within a reasonable time after the entry of judgment.").

[9]Given the complex exercise of discretion required to overcome Mellon's defective notice of removal, we conclude Mellon's costs in case number 12-3526 should not be taxed against Reece. See Fed. R. App. P. 39(a)(4). Provided Reece complies with the statutory and procedural requirements, see, e.g., 28 U.S.C. § 1924; Fed. R. App. P. 39(d)-(e); 8th Cir. R. 39A, he may recover his costs in case number 13-1254, see Fed. R. App. P. 39(a)(4).