# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1350

_____

Richard Barcomb

*Plaintiff - Appellant*

v.

General Motors LLC

*Defendant - Appellee*

_____

No. 19-1870

_____

Richard Barcomb

*Plaintiff - Appellant*

v.

General Motors, LLC

*Defendant - Appellee*

_____

Appeals from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: December 12, 2019
Filed: October 15, 2020

_____

Before ERICKSON, MELLOY, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Richard Barcomb alleged that he was wrongfully fired by General Motors, LLC, under both federal and state law because he reported safety issues with the manufacturing process at the plant in Wentzville, Arkansas. The district court granted summary judgment to GM on the retaliatory discharge claim under § 31307 of the Moving Ahead for Progress in the 21st Century Act (MAP-21), Pub. L. 112-141, 126 Stat. 405, 765–769 (July 6, 2012), codified at 49 U.S.C. § 30171, and it granted costs to GM under Federal Rule of Civil Procedure 54(d).[1] Barcomb appeals, and we affirm in part and reverse in part.

## I.

From 2014 until his termination in 2016, Barcomb worked in the plant's Final Process Repair Department. As a vehicle progresses through the assembly line and errors occur, employees report and log damaged vehicles in an electronic system, the Global Standard Inspection Process (GSIP), and on paper tickets. Those vehicles then go to the Final Process Repair phase where the mechanics (like Barcomb) make the needed repairs. Once repairs are completed, the employee marks it in GSIP (and presumably the paper ticket) and the vehicle is later tested and sent through a final inspection line.

_____

[1]The district court also dismissed Barcomb's wrongful termination claim arising under Missouri's public policy claim exception. We agree that this state law claim falls with Barcomb's MAP-21 retaliation claim.

Beginning in January 2015, Barcomb became concerned that his co-workers were falsely marking repairs complete in GSIP. These false reports ranged from cosmetic to safety-related issues. He "took serious issue with personnel who were trying to take credit for doing work they had not done" and made those repairs himself. D. Ct. Dkt. 57 at 2–3. Barcomb identified necessary repairs based on the paper tickets that accompanied the vehicles. In one case, he found that both the GSIP and paper tickets indicated a repair to a broken steering plug had been completed, but a note on the windshield indicated otherwise. He replaced the broken plug and reported the GSIP failure to GM's safety hotline. He also reported concerns about the false reports, or fraud as he refers to it in his complaint, to his supervisor, the shift leaders, and the general assembly area manager. GM investigated these reports.

In May 2016, GM terminated Barcomb for creating a hostile work environment due to a threatening comment Barcomb made during an involuntary disciplinary review. He filed suit alleging that GM violated MAP-21 by retaliating against him for alerting management to "motor vehicle defects falsely reported and/or confirmed as repaired." Compl., D. Ct. Dkt. 1-1, ¶ 66 (a) & (b). As relevant here, MAP-21 prohibits motor vehicle manufacturers from discharging an employee for reporting "information relating to any motor vehicle defect, noncompliance, or any violation or alleged violation of any notification or reporting requirement under this chapter." 49 U.S.C. § 30171(a)(1).

The district court granted summary judgment to GM because retaliation for Barcomb's "complaints on the misuse of the GSIP system as a whole and the false reporting by one co-worker in particular" is not actionable under MAP-21. D. Ct. Dkt. 57 at 3. In addressing this issue of first impression, the court held that the plain language "seems to address only post-manufacture whistleblowing." *Id.* at 7. As Barcomb's claims concerned co-worker misconduct and did not address a defect in a completed motor vehicle, his claims failed. Barcomb timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.

II.

Barcomb claims that MAP-21's plain language protects him from retaliatory discharge because he provided "information relating to any motor vehicle defect" to GM. We review the district court's grant of summary judgment *de novo*. *Evergreen Inv., LLC v. FCL Graphics, Inc.*, 334 F.3d 750, 753 (8th Cir. 2003).

We begin with the statutory text. MAP-21 protects employees providing "information relating to any motor vehicle defect." 49 U.S.C. § 30171(a)(1). A defect "includes any defect in performance, construction, a component, or material of a motor vehicle or motor vehicle equipment." *Id.* § 30102(a)(3). As one court has noted, that "definition is, unfortunately, circular." *United States v. Gen. Motors Corp.*, 841 F.2d 400, 404 (D.C. Cir. 1988). Congress enacted this definition in the National Traffic and Motor Vehicle Safety Act of 1966, Pub. L. 89-563, 80 Stat. 718, 719, and a relatively close-in-time dictionary states that a defect is the "want or absence of something necessary for completeness, perfection, or adequacy in form or function." Defect, Webster's Third New International Dictionary (1976).[2]

The statute defines motor vehicle as a "vehicle driven or drawn by mechanical power and manufactured primarily for use on public streets, roads, and highways." *Id.* § 30102(a)(7). And motor vehicle equipment, as relevant here, means "any system, part, or component of a motor vehicle as originally manufactured." *Id.* § 30102(a)(8)(A). Notably, these definitions focus on the products themselves, not the internal manufacturing processes or accountability systems that automakers use. Taking all this together, we read the statute as protecting employees who provide

_____

[2]We note that the first definition might limit a defect to "an irregularity in a surface or structure that spoils the appearance or causes weakness or failure." *Id.* We believe the second definition better comports with the statutory definition of "any defect," 49 U.S.C. § 30102(a)(3), and includes irregularities or deviations from a design as well as flaws in that design.

information about something lacking in the completeness, perfection, or adequacy of the performance, construction, a component, or the material of a motor vehicle or its components.[3]

Barcomb primarily claims that he "provided substantial information regarding a pattern or practice of false repairs of specific motor vehicle defects." Barcomb Br. 30. By false repairs, we think the substantial record shows that he means that other employees falsely reported a repair complete in the GSIP system. As the district court put it, Barcomb complained about "the misuse of the GSIP system as a whole and the false reporting by one co-worker in particular." D. Ct. Dkt. 57 at 3. But the GSIP system was one of two systems tracking needed repairs, and, in the one case where both systems falsely reported repairs, a note attached to the vehicle told Barcomb what to fix. Barcomb's reports that coworkers received credit for repairs he completed are not information related to a motor vehicle defect.

Barcomb argues that the district court improperly limited MAP-21's protection for motor vehicle defects to "post-manufacture" or completed vehicles. Specifically, he claims that "[a] violation of law need not ever occur, be 'completed,' or be specifically cited for reporting to constitute 'protected activity' under § 30171." Barcomb Br. 35. He also urges that MAP-21-protected activity "includes the expression of reasonable, but mistaken, beliefs about legal violations." *Id.* at 36.

---

[3]We observe that the MAP-21 provision is the only time in this chapter that Congress does not use the phrase "defect related to motor vehicle safety" or refer to it. The regulatory regime revolves around defects related to motor vehicle safety. *See* 49 U.S.C. § 30118 (procedures for notification and defect proceedings for "defects related to motor vehicle safety"); 49 C.F.R. § 554.5 ("The Office of Defects Investigation conducts investigations to implement the provisions of the Act concerning the identification and correction of safety-related defects in motor vehicles and motor vehicle equipment."). Because some GSIP system failures implicated repairs related to motor vehicle safety, we reserve the question of whether "defects" means those unrelated to motor vehicle safety.

We are not persuaded. Despite his claims that he "repeatedly objected to manufacturing activities he reasonably believed jeopardized customer safety or otherwise violated motor vehicle safety standards," Barcomb Br. 30, Barcomb did not report an alleged violation of law and does not identify an alleged violation of a Federal Motor Vehicle Safety Standard. His only claim is that he was retaliated against for reporting information related to motor vehicle defects.

To be sure, the text of the other whistleblower statutes Barcomb cites protects those who provide information relating to "conduct which the employee *reasonably believes* constitutes a violation of any Federal law, rule, or regulation." *E.g.*, 49 U.S.C. § 20109 (emphasis added). MAP-21 follows suit and protects those who provide information related to "any violation or *alleged* violation of any notification or reporting requirement of this chapter,"[4] 49 U.S.C. § 30171(a)(1) (emphasis added), and those who object or refuse to participate in "any activity that the employee *reasonably believe[s]* to be in violation of any provision of [this] chapter," *id.* § 30171(a)(5) (emphasis added). These same provisions do not use "alleged motor vehicle defect" or credit an employee's reasonable belief about a defect. The text does not support Barcomb's argument conflating protections for reporting technical violations of law with those for motor vehicle defects.

Barcomb warns that without protecting information related to manufacturing processes, virtually all automotive manufacturing employees will not benefit from MAP-21's anti-retaliation protections because they only see unfinished vehicles. We acknowledge that there is a fine distinction between a report about a process and a

---

[4]The chapter imposes a number of requirements on manufacturers. For example, if a manufacturer learns that a "vehicle or equipment contains a defect and decides in good faith that the defect is related to motor vehicle safety," they must notify the Secretary of Transportation and the owners, purchasers, and dealers of the vehicle or equipment in compliance with statutory procedures. 49 U.S.C. § 30118(c)(1).

report about the process's result. But Barcomb's information amounted to a report that if a defect was identified on the assembly line, one of the two quality control systems may not show it. He identified a potential risk caused by errors in the reporting system,[5] but not information about processes that *created defects* in motor vehicles or motor vehicle equipment.

We acknowledge that the phrase "relating to" is "broad" and "indeterminate." *Mellouli v. Lynch*, 135 S. Ct. 1980, 1990 (2015). Those words, however, "extended to the furthest stretch of their indeterminacy stop nowhere" and so context "may tug in favor of a narrower reading." *Id.* (cleaned up). The dissent points to MAP-21's broad purpose and policy statement, 49 U.S.C. § 30101, to suggest a narrower interpretation is inappropriate. *See infra* at 13. Though mindful of the dissent's points, we are satisfied that the text provides all the context we need.

As we have noted, the provisions of MAP-21 relevant here concern products, not processes ancillary to those products. *See supra* at 4. MAP-21's text protects employees who report "information relating to any motor vehicle defect"—not those who report problems with a process for ensuring quality control along the assembly line. 49 U.S.C. § 30171(a)(1). The context of the phrase "relating to" as it is used in MAP-21 is not so broad as to capture any information about automobile manufacturing that could increase safety regardless of how far removed it is from a defective product.

We hold that Barcomb's complaints about the quality control processes in a manufacturing plant are not information related to a motor vehicle defect, and thus he did not engage in protected activity under MAP-21.

---

[5]*See* Rep. Br. 2 (Barcomb provided information on pattern or practice of falsely reporting repairs completed "that created needless risk of shipping defective vehicles to customers").

III.

Barcomb also claims that the district court should not have granted $7,094 in costs to GM because counsel did not submit a verified bill of costs within 21 days of the judgment and that the district court abused its discretion by permitting recovery of video deposition costs and postage/shipping costs. We review legal issues about the award of costs *de novo*, but we review the actual award of costs for an abuse of discretion. *Reece v. Bank of New York Mellon*, 760 F.3d 771, 779 (8th Cir. 2014). As an initial matter, GM concedes that the district court erred in awarding $76.50 in postage and shipping costs. GM Br. 20. We agree and reverse as to those costs.

The court granted final judgment to GM on January 23, 2019. Defense counsel timely filed a Bill of Costs and supporting documents through the court's Case Management and Electronic Case Files system with his credentials. D. Ct. Dkt. 60. On the Bill of Costs form, counsel typed his name in the "Name of Attorney" field, but he did not do the same in the "s/ Attorney" field above it. *Id.* After Barcomb objected to the absent signature, counsel moved to correct or amend the bill and included a corrected bill with the completed field on February 25. D. Ct. Dkt. 66-1. The district court granted that motion. D. Ct. Dkt. 69.

Barcomb argues that *Reece* prevents granting costs unless the signed affidavit is submitted with the Bill of Costs. But *Reece* only holds that it is error to award costs when counsel never complies with the affidavit requirement. 760 F.3d at 779. The statute only requires that an affidavit be filed "[b]efore any bill of costs is taxed," 28 U.S.C. § 1924, and counsel did so by asking court to amend the Bill before costs were taxed. Barcomb does not argue that the court erred in granting the motion to amend, and the district court did not abuse its discretion in doing so. Also, the original bill was electronically filed by counsel, and under the local rules and procedures, "[t]he use of an attorney's e-filing login and password to file a document constitutes the signature of that attorney on that document for purposes of" Rule 11.

Section II (H) Signatures, E. D. of Mo. CM/ECF Proc. Manual (rev. Nov. 1, 2019). Rule 11 applies to every "other paper [that] must be signed by at least one attorney of record in the attorney's name" and papers filed under Rule 54(d). *See* Fed. R. Civ. P. 11(a) & (d). We find the district court did not err in deciding to grant costs.

The district court also did not abuse its discretion by awarding both the costs of stenographic and video deposition services. *Stanley v. Cottrell, Inc.*, 784 F.3d 454, 467 (8th Cir. 2015) (permitting costs for "both printed and electronically of the same deposition as long as each transcript is necessarily obtained for use in a case"). It agreed with GM that Barcomb's credibility "would have been a critical issue at trial, thus requiring a videotaped deposition for use at trial." D. Ct. Dkt. 69 at 2. Barcomb claims that GM must argue, but did not, that he was not credible to get costs. We disagree. It is the rare case where the credibility of the primary witness will not be at issue, and Barcomb's credibility would obviously matter here.

## IV.

The district court is reversed as to the taxing of $76.50 in postage and shipping costs, and is otherwise affirmed.

MELLOY, Circuit Judge, concurring in part and dissenting in part.

Because I read MAP-21 broadly enough to protect Barcomb's reports to his superiors as "relating to motor vehicle defects," I respectfully dissent from Section II of the majority's opinion.

The National Traffic and Motor Vehicle Safety Act of 1966 was originally enacted "to reduce traffic accidents and deaths and injuries resulting from traffic accidents." 49 U.S.C. § 30101. It was amended in 2012 by MAP-21, which added whistleblower protections applicable to the automobile industry. Under its terms, a

manufacturer of motor vehicles may not discharge an employee because the employee "provided, caused to be provided, or is about to provide . . . information relating to any motor vehicle defect, noncompliance, or any violation or alleged violation of any notification or reporting requirement of this chapter." Id. § 30171(a)(1).

Barcomb alleged GM fired him, in part, for his reports to management that repairs were being left incomplete by his co-workers, who were falsely reporting the same repairs as complete. Specifically, in January 2015, Barcomb started to notice some vehicles were coming into the Wentzville factory's final process-repair department needing repairs but having already been confirmed as repaired in the electronic-repair tracking system. These false repairs, marked as "bought off," could pass through the final process repair area undetected. Barcomb provided information to his superiors about his concern that some necessary repairs had not been attempted at all. Barcomb advised GM management that on occasion he, himself, ended up making the needed repairs. Barcomb identified several specific incomplete repairs, including one involving a broken steering plug. Barcomb's concerns eventually led to a high-level internal investigation as to the pattern of repair confirmations happening prior to actual repairs.

Barcomb's repeated reports apparently caused him stress at work—they also seemed to annoy his superiors and coworkers. Barcomb made additional reports in March and April 2016. On March 4, 2016, Barcomb reported that he had discovered a rubber rat in a noose in his workstation.

On March 31, 2016, Barcomb was disciplined for not being at his work station. Barcomb's superiors reported that, when walking out of a meeting regarding the discipline, Barcomb said something to the effect of: "I'll see you guys at your funeral." His superiors took this as a threat. Barcomb denies making the statement and says that he instead stated something like "this is a mistake." Barcomb took a leave of absence. When he returned to work on May 2, 2016, Barcomb was offered

-10-

two disciplinary options. Barcomb declined both offers. GM then fired Barcomb, citing his alleged threat as creating a hostile work environment.

On summary judgment, the district court concluded Barcomb's reports did not qualify as protected activity. It determined that, because the definitions of "motor vehicle" and "motor vehicle equipment" in § 30102(a) use the simple past tense verb, "manufactured," MAP-21 must only cover whistleblowing related to post-manufacture defects.[6] The district court explained that reports of incomplete repairs in vehicles still being manufactured categorically could not be "relat[ed] to motor vehicle defects" because "motor vehicle defects" only exist in a fully complete and manufactured vehicle.

Reviewing de novo, the majority affirms the judgment of the district court on slightly different grounds. The majority first clarifies the meaning of "motor vehicle defect" by way of a dictionary definition. It then reads MAP-21's whistleblower protections in two parts. First, it notes that whistleblowers who provide information "relat[ed] to . . . any violation or alleged violation of any notification or reporting requirement of this chapter," id. § 30171(a)(1), are allowed to rely on their reasonable belief that a violation has occurred because of the word "alleged." Next, it points out that a whistleblower who instead provides information "relat[ed] to any motor vehicle defect" cannot report mere *allegations* of any motor vehicle defect because the statutory language does not say "alleged motor vehicle defect." Within this

_____

[6]The statute defines motor vehicle as a "vehicle driven or drawn by mechanical power and manufactured primarily for use on public streets, roads, and highways." 49 U.S.C. § 30102(a)(7). And motor vehicle equipment, as relevant here, means "any system, part, or component of a motor vehicle as originally manufactured." Id. § 30102(a)(8)(A). In my view, these definitions do not necessitate that something "manufactured" is something "completed." Instead, something like a motor vehicle can be considered "manufactured" at a point in the manufacturing process before it is fully ready to be delivered to a consumer.

framework, the majority describes Barcomb's reports as identifying "a potential risk caused by errors in the reporting system," but apparently not an actual defect. It concludes that Barcomb did not engage in protected activity because his reports did not provide "information about processes that created defects in motor vehicles or motor vehicle equipment."

I would reach a different conclusion. The statutory language at issue requires that a whistleblower provide "information *relating to* any motor vehicle defect." 49 U.S.C. § 30171(a)(1). MAP-21 does not define the phrase "relating to." However, the phrase "relating to" is not a strict, severely limiting term. When we have interpreted it in the past, we have given the term its broad plain meaning. United States v. Brown, 598 F.3d 1013, 1015 (8th Cir. 2010) (interpreting the phrase "relating to" broadly in the criminal context); United States v. Weis, 487 F.3d 1148, 1152 (8th Cir. 2007) (same); see also Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992) (broadly defining the phrase "relating to," in the context of preemption analysis, as "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with" (quoting Black's Law Dictionary 1158 (5th ed. 1979))). The Supreme Court has explained that a federal statute's use of the phrase "relating to" broadens its coverage unless the text or overall context of the statute require a more narrow construction. Mellouli v. Lynch, 135 S. Ct. 1980, 1990 (2015) (analyzing an immigration statute). Nothing in the text or context of MAP-21 gives us reason to narrow our construction here. Whistleblower "statutes generally use broad language and cover a variety of whistleblowing activities." Haley v. Retsinas, 138 F.3d 1245, 1250 (8th Cir. 1998) (analyzing the whistleblower provision of the Federal Deposit Insurance Act).

Even if we accept the majority's definition of "motor vehicle defect," we must still give full effect to the phrase "relating to" in the statutory text. This requires us to give a generally broad scope to MAP-21's definition of protected activity. Given that broad scope, Barcomb did not need to provide information strictly "about" a

motor vehicle defect or "about processes that created" a motor vehicle defect. Instead, to have engaged in protected activity, he needed to provide information "relating to any motor vehicle defect." 49 U.S.C. § 30171(a)(1).

Barcomb provided information about incomplete repairs and false reporting of repairs within the Wentzville factory. I view this as plainly falling within the scope of "providing information relating to any motor vehicle defect" because information about incomplete repairs necessarily stands in some relation to motor vehicle defects. And, even relying on the majority's definition of a "motor vehicle defect," it seems self-evident that information about important mechanical repairs being incomplete—and falsely labeled as complete—at the final repair stage of the manufacturing process is related to "something lacking in the completeness, perfection, or adequacy of the performance, construction, a component, or the material of a motor vehicle or its components." See supra at 4–5.

The majority's more narrow interpretation of MAP-21 is not supported by the statutory language, nor does it bear Congress's intent to broadly protect whistleblowing activity in furtherance of "reduc[ing] traffic accidents and deaths and injuries resulting from traffic accidents." 49 U.S.C. § 30101. Both the district court and the majority imply that a whistleblower like Barcomb cannot be protected because he reported on an internal repair process. However, it is exactly because Barcomb had access to information related to a breakdown of an internal repair process that his reporting activity *should* be protected. Barcomb's knowledge of incomplete repairs on the line was knowledge that may have been inaccessible once the vehicle passed through the doors of the factory. The fact that the information he reported was based on knowledge that necessarily preceded the completion of a vehicle does not make his activity unprotected by MAP-21.

Of course, to be successful on his claim under MAP-21, Barcomb not only needed to prove that he engaged in protected activity. He also needed to show,

-13-

among other things, that GM decided to terminate his employment "because" he engaged in protected activity. See 49 U.S.C. § 30171(a). Based on my review of the record, I believe this is a case that turns on causation.[7] Because I would find that Barcomb engaged in protected activity, I would reverse and remand for the district court to make a ruling in the first instance as to whether there is a triable issue as to causation.[8]

————————————————

[7]It appears the parties generally agree—the majority of their briefing to the district court related to causation, specifically GM's argument that it lacked retaliatory motivations for firing Barcomb.

[8]I would also reverse as to Barcomb's state law claim so that the district court could determine its viability.

-14-