# United States Court of Appeals

## For the Eighth Circuit

_____

No. 20-1748
_____

Nuevos Destinos, LLC; Nuevos Destinos Peru, S.A.C.; William P. Cook

*Plaintiffs - Appellants*

v.

Samuel Peck; Ignacio Harten Rodriguez Larrain; Marysol Salazar; Agricola
Peruana Del Sol, S.R.L.; SKE Midwestern, Inc.; Giuliana Pasquale; C&V Exports,
S.A.C.

*Defendants - Appellees*

Jorge Harten Costa; Javier Rodriguez Larrain Salinas; Ofelia Maria Rodriguez
Larrain Salinas De Harten

*Defendant*s

Peruvian Organic International Trading S.A.C.

*Defendant - Appellee*

Jorge Emilio Harten Rodriguez Larrain; Confactor S.A.C.

*Defendant*s

Gonzalo Rodriguez Larrain De Lavalle

*Defendant - Appellee*

Convalor S.A.C.

*Defendant*

Javier Urteaga

*Defendant - Appellee*

Emilio Farah

*Defendant*

Manuel Viduarre; Felipe Bedregal; Nilton Palacios Pozo; Antonio Salazar Salazar

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of North Dakota - Eastern
_____

Submitted: February 17, 2021
Filed: June 9, 2021
_____

Before COLLOTON, BENTON, and KELLY, Circuit Judges.
_____

KELLY, Circuit Judge.

Plaintiffs Nuevos Destinos, LLC (NDL), Nuevos Destinos Peru, S.A.C. (NDP), and William Cook (collectively, the Appellants) appeal the denial of their motion to amend their complaint and the dismissal of their state law claims against various U.S. and Peruvian defendants. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

-2-

# I. Background

This case involves numerous parties and a detailed factual history, only some of which is relevant to this appeal. NDL is a Florida limited liability company (LLC) that purchases agricultural products in Peru and exports them to the United States and other countries. NDP is a Peruvian corporation that purchases Peruvian agricultural products on behalf of NDL. Cook, a United States citizen, is a principal of NDL who allegedly "personally financed" the purchases of agricultural products at issue in this action.

In 2012, the Appellants entered into business arrangements with the defendants, a group that consists of a combination of natural persons and business entities, for the purchase and export of Peruvian agricultural products. One of the defendants, Ignacio Harten Rodriguez Larrain (Harten), was the General Manager of Agricola Peruana Del Sol, S.R.L. (APS), a now-defunct Peruvian LLC that exported Peruvian agricultural products. According to Appellants, Harten—the "central mastermind" of an alleged racketeering enterprise—along with SKE Midwestern, Inc. (SKE), a North Dakota corporation, Samuel Peck, a United States citizen and Vice President of SKE, and the other defendants, fraudulently induced NDL to enter into contracts with APS for the purchase and export of Peruvian agricultural products. Appellants claim that although they spent $1,609,100 to purchase and to process agricultural products, APS delivered only $238,907 worth of product to NDL, causing Appellants to incur financial losses.

On October 30, 2015, Appellants filed the present action in the United States District Court for the District of Columbia against SKE, Peck, APS, and 18 other defendants, asserting civil Racketeer Influenced and Corrupt Organizations Act (RICO) claims, 18 U.S.C. § 1962(c), (d), as well as related state law claims of fraud, breach of contract, and conspiracy to commit fraud. Appellants alleged that the district court had federal question subject matter jurisdiction over the civil RICO

claims, see 28 U.S.C. § 1331; 18 U.S.C. § 1964(a), (c), and supplemental jurisdiction over the remaining state law claims, see 28 U.S.C. § 1367(a). At no time did they plead that the district court had diversity jurisdiction over their state law claims pursuant to 28 U.S.C. § 1332(a)(3).

In February 2016, the nine defendants who had entered appearances, including SKE and Peck, moved to dismiss the complaint on a number of grounds, including improper service of process, lack of personal jurisdiction, failure to state civil RICO claims, and lack of supplemental jurisdiction over the Appellants' state law claims. On January 2, 2019, the district court[1] granted those defendants' motions to dismiss. On February 22, 2019, however, the court stayed its dismissal order and transferred the case to the United States District Court for the District of North Dakota, finding that transfer rather than dismissal was the more appropriate remedy due to SKE and Peck's contacts with North Dakota.

In June 2019, the same nine defendants renewed their motions to dismiss, which the transferee district court[2] granted on December 2, 2019. The court dismissed seven defendants, finding that Appellants failed to properly serve them, see Fed. R. Civ. P. 4(f), and that the court lacked personal jurisdiction over them, see Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923 (2011). It then dismissed the civil RICO claims against SKE and Peck, finding that the complaint failed to plead a continuous pattern of racketeering activity. See Crest Constr. II, Inc. v. Doe, 660 F.3d 346, 356 (8th Cir. 2011) ("A pattern is shown through two or more related acts of racketeering activity that amount to or pose a threat of continued criminal activity." (quoting Nitro Distrib., Inc. v. Alticor, Inc., 565 F.3d 417, 428 (8th

[1]The Honorable Emmet G. Sullivan, United States District Judge for the District of Columbia.

[2]The Honorable Peter D. Welte, Chief Judge, United States District Court for the District of North Dakota.

Cir. 2009))). The court, left with only Appellants' state law claims against SKE and Peck, declined to exercise supplemental jurisdiction over those remaining claims and dismissed them from the case.[3] See 28 U.S.C. § 1367(c)(3) ("The district court[] may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction . . . .").

On January 17, 2020, after more than four years of litigation, Appellants moved for the first time to amend their complaint. They proposed to "allege with further particularity facts" to show predicate racketeering acts sufficient to sustain their civil RICO claims. The motion did not address the district court's decision not to exercise supplemental jurisdiction over their remaining state law claims, and Appellants did not attach a proposed amended complaint with their motion. The district court denied the motion on February 20, 2020, finding that Appellants failed to comply with the court's local rules, which require "[a] party filing a motion for leave of court to file pleadings [to] file the proffered pleading as an attachment," D.N.D. Civ. L. R. 5.1(C), and moreover that "any amendment would be severely untimely, futile, and unfairly prejudicial."

---

[3]"A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." Crest Constr. II, 660 F.3d at 359 (quoting Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009)). The district court did not abuse its discretion in declining to exercise supplemental jurisdiction. See id. (finding no abuse of discretion where, as here, the defendants requested that the district court decline to exercise supplemental jurisdiction over the remaining state law claims after dismissing the federal RICO claims, and the plaintiffs failed to object or otherwise respond to the defendants' request); see also McManemy v. Tierney, 970 F.3d 1034, 1041 (8th Cir. 2020) ("[W]hen a district court has dismissed every federal claim, . . . 'judicial economy, convenience, fairness, and comity' will usually 'point toward declining to exercise jurisdiction over the remaining state-law claims.'" (quoting Wilson v. Miller, 821 F.3d 963, 970–71 (8th Cir. 2018))).

On March 10, 2020, the district court dismissed the remaining 12 defendants, dismissing five for Appellants' failure to prosecute, see Fed. R. Civ. P. 41(b), six for deficient service of process and lack of personal jurisdiction, and one (APS) after dismissing Appellants' civil RICO claims for failure to state a claim and after declining to exercise supplemental jurisdiction over the remaining state law claims. Appellants now appeal.

## II. Discussion

On appeal, Appellants for the first time seek to abandon the basis of their initial motion to amend[4]—to plead additional facts in support of their civil RICO claims—to

---

[4]To the extent Appellants challenge the district court's denial of their motion to amend, we affirm the district court's decision. We generally review the denial of a motion for leave to amend for an abuse of discretion, reviewing de novo the legal conclusions underlying a denial based on the futility of the proposed amendments. See Crest Constr. II, 660 F.3d at 359. A court should grant a party leave to amend its pleading at any time "when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, "denial of leave to amend may be justified by undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 557–58 (8th Cir. 2006) (quoting United States ex rel. Gaudineer & Comito, L.L.P. v. Iowa, 269 F.3d 932, 936 (8th Cir. 2001)); see also In re Medtronic, Inc., Sprint Fidelis Leads Prod. Liab. Litig., 623 F.3d 1200, 1208 (8th Cir. 2010) ("Post-dismissal motions to amend are disfavored.").

The district court did not abuse its discretion in denying Appellants leave to amend. Appellants failed to submit a proposed amended pleading with their motion, as required by the local rules. See O'Neil v. Simplicity, Inc., 574 F.3d 501, 505 (8th Cir. 2009) ("A district court does not abuse its discretion in denying leave to amend where a plaintiff has not followed applicable procedural rules."). Moreover, Appellants' proposed amendments were untimely, relied on previously available documents and facts, and would have been futile. See In re Medtronic, 623 F.3d at 1208.

instead "delete" their RICO claims and assert the remaining state law claims of fraud, breach of contract, and conspiracy to commit fraud against six defendants (including SKE, Peck, and APS)[5] based on diversity jurisdiction, see 28 U.S.C. § 1332(a)(3). In their pleadings and motions briefing before the district court, Appellants "consistently and exclusively" asserted supplemental jurisdiction as the basis for their state law claims. Dubach v. Weitzel, 135 F.3d 590, 593 (8th Cir. 1998). They did not seek to amend their complaint to recharacterize their state law claims as diversity-based claims or to allege the citizenship of all 24 parties initially named in this action.

"Federal courts are courts of limited jurisdiction and the 'threshold requirement in every federal case is jurisdiction.'" Barclay Square Props. v. Midwest Fed. Sav. & Loan Ass'n of Minneapolis, 893 F.2d 968, 969 (8th Cir. 1990) (quoting Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987)); see also Gonzalez v. Thaler, 565 U.S. 134, 141 (2012) ("Subject-matter jurisdiction can never be waived or forfeited."). "The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830 (1989); see also Walker ex rel. Walker v. Norwest Corp., 108 F.3d 158, 161 (8th Cir. 1997) (noting that the party asserting diversity jurisdiction bears the burden "to plead the citizenship of the parties"). We nevertheless have the discretion to "allow the party asserting that subject matter jurisdiction exists to amend its complaint on appeal to properly allege diversity of citizenship." Barclay Square Props., 893 F.2d at 969; see 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.").

---

[5] Appellants seek to assert their remaining state law claims against—in addition to SKE, Peck, and APS—Harten, Marysol Salazar, and Peruvian Organic International Trading S.A.C. (POIT). Appellants do not, however, challenge the district court's dismissal of the claims against those three defendants for deficient service of process and lack of personal jurisdiction. We therefore need not consider Appellants' § 1653 motion to amend as to Harten, Salazar, and POIT.

Looking to the totality of the circumstances, we decline to exercise our discretion to permit Appellants to amend their complaint on appeal.[6] This case presents the unusual circumstance in which Appellants not only failed to plead diversity jurisdiction in their complaint but also made no attempt to amend their complaint to do so—in spite of the defendants' jurisdictional challenges and the district court's decision not to exercise supplemental jurisdiction over the remaining state law claims. This case does not involve merely a technical pleading error. See, e.g., Reece v. Bank of N.Y. Mellon, 760 F.3d 771, 778 (8th Cir. 2014) (exercising discretion under § 1653 to amend a defective complaint that alleged diversity of *residence* rather than diversity of *citizenship* under 28 U.S.C. § 1332); Nat'l Farmers Union Prop. & Cas. Co. v. Fisher, 284 F.2d 421, 422–23 (8th Cir. 1960) (same). Rather, Appellants seek to amend entirely the jurisdictional basis for their remaining state law claims—in addition to dropping their two civil RICO claims and 15 of 21 defendants—for the first time on appeal. Appellants had notice as early as 2016 that the district court could decline to exercise supplemental jurisdiction over their state law claims if it dismissed their civil RICO claims. As such, Appellants had a reasonable opportunity—indeed, years—to allege diversity jurisdiction in the district court but failed to do so. Permitting Appellants to amend their defective pleadings

---

[6]Appellants seek to allege diversity jurisdiction under 28 U.S.C. § 1332(a)(3), which confers to district courts "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States and in which citizens or subjects of a foreign state are additional parties." Our court has not had the occasion to construe the requirements of § 1332(a)(3), but for purposes of this appeal, we assume without deciding that the presence of foreign parties from the same country on both sides of the action does not destroy diversity. See Tango Music, LLC v. DeadQuick Music, Inc., 348 F.3d 244, 245–46 (7th Cir. 2003); cf. Dresser Indus., Inc. v. Underwriters at Lloyd's of London, 106 F.3d 494, 497 (3d Cir. 1997); Transure, Inc. v. Marsh & McLennan, Inc., 766 F.2d 1297, 1298 (9th Cir. 1985). Therefore, we assume that Appellants would be able to base their claims on diversity jurisdiction even though there are Peruvian parties on both sides of the action.

this late in the game would be unfair to the defendants.  See Dubach, 135 F.3d at 593; cf. Sarnoff v. Am. Home Prods. Corp., 798 F.2d 1075, 1079 (7th Cir. 1986) (noting § 1653 "presupposes that the parties, not suspecting a jurisdictional difficulty, had no reasonable opportunity to cure it before the appeal"), superseded on other grounds by Gardynski-Leschuck v. Ford Motor Co., 142 F.3d 955 (7th Cir. 1998); Mills v. State of Maine, 118 F.3d 37, 53 (1st Cir. 1997) ("[W]here a party has had an opportunity to seek to amend its pleadings in the district court, it is not appropriate for that party belatedly to seek leave to amend on appeal pursuant to 28 U.S.C. § 1653.").

## III. Conclusion

For the foregoing reasons, we decline to grant Appellants leave to amend the jurisdictional basis of their claims on appeal, and we affirm the judgment of the district court.

_____