# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-1180
_____

Nancy Axline

*Plaintiff - Appellant*

v.

3M Company; Arizant Healthcare, Inc.

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: March 16, 2021
Filed: August 5, 2021
_____

Before GRUENDER, KELLY, and GRASZ, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Nancy Axline is a plaintiff whose case is part of the Bair Hugger multidistrict litigation ("MDL") against 3M Company and Arizant Healthcare, Inc. (collectively, "3M"). *See generally In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, MDL No. 15-2666 (JNE/DTS), 2019 WL 4394812 (D. Minn. July 31, 2019).

In her case, the district court[1] concluded that Ohio substantive law governed her claims, found that she had failed to plead actionable claims under Ohio substantive law, granted 3M judgment on the pleadings for this reason, denied her motion for leave to amend her complaint to plead claims that would be actionable under Ohio substantive law, and ultimately dismissed her case with prejudice. She appeals the orders of the district court deciding that Ohio substantive law applies in her case and denying her motion for leave to amend her complaint. We affirm.

## I.

In December 2015, the Judicial Panel on Multidistrict Litigation centralized the *In re Bair Hugger Forced Air Warming Devices Products Liability Litigation* in the district court for coordinated pretrial proceedings. In April 2016, the district court entered an MDL-wide order ("Direct Filing Order") allowing plaintiffs joining the MDL in the future to file their complaints directly in the district court, thereby minimizing delays associated with the transfer of individual actions that would otherwise be filed elsewhere. In the Direct Filing Order, the district court instructed that, if a dispute over the applicable substantive law arose in a case that was directly filed pursuant to the order, the district court generally would apply Minnesota choice-of-law rules to resolve the dispute. That said, if the direct-filing plaintiff identified in her complaint her current residence, the date and location of the surgery in which she claims the Bair Hugger was used, and the appropriate venue where the action otherwise would have been filed, the Direct Filing Order provided that the choice-of-law rules of the appropriate venue identified in the complaint would apply.

In February 2017, Axline directly filed a complaint in the district court as part of the MDL. She alleged that she was a resident and citizen of Ohio; that on April 21, 2009, the Bair Hugger was used during her hip surgery at a hospital in New Albany, Ohio; and that the appropriate venue where she would have filed her

---

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

complaint but for the Direct Filing Order was the United States District Court for the Northern District of Ohio. Axline asserted fourteen state-law causes of action, including negligence and design defect under Minnesota common law. Subsequently, Axline filed a *Lexecon* waiver to allow the district court to try her case.[2]

Thereafter, in another individual MDL action, the district court ruled that the substantive law of those plaintiffs' state of residence would govern their claims rather than Minnesota law. This prompted Axline to attempt to retract her *Lexecon* waiver, explaining that that choice-of-law ruling "resulted in a material difference in the posture of [her] case." The district court denied this attempted retraction because, among other reasons, Axline mentioned "no grounds for reasonably expecting a contrary choice-of-law ruling."

Subsequently, 3M moved for judgment on the pleadings. As relevant here, 3M argued that, under Ohio choice-of-law rules applicable in Axline's case, Ohio substantive law governed her claims. 3M also argued that, under Ohio substantive law, her common-law claims were not actionable because the Ohio Products Liability Act ("OPLA") had abrogated all common-law products-liability causes of action. *See* Ohio Rev. Code § 2307.71(B).

Responding in opposition but seemingly overlooking the fact that her allegations made Ohio choice-of-law rules apply in her case under the Direct Filing Order, Axline asserted that Minnesota choice-of-law rules applied and that under

---

[2]"Federal law limits an MDL court's jurisdiction over a transferred case to pretrial proceedings and provides that once those are completed, the MDL court must remand the transferred case to the district from which it was transferred [for trial proceedings]. Cases that are directly filed in an MDL court are treated as if they were transferred from a judicial district sitting in the state where the case originated. An MDL court can try a case where venue is improper if the parties waive their objections. Such waivers are known as *Lexecon* waivers." *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 348 (5th Cir. 2017) (footnotes and internal quotation marks omitted).

those rules Minnesota substantive law governed her claims. Axline mentioned in passing Ohio choice-of-law rules, but she made no argument that Minnesota substantive law applied under those rules. Axline also requested that, if the district court decided that Ohio substantive law governed her case, then she should be granted leave to amend her complaint to plead the statutory causes of action under the OPLA for negligent failure to warn and design defect. *See* Ohio Rev. Code §§ 2307.75, 2307.76.

The district court granted 3M's motion for judgment on the pleadings in pertinent part. It explained that, pursuant to the Direct Filing Order and Axline's own allegations, Ohio choice-of-law rules applied. It then recognized that, under Ohio choice-of-law rules, the substantive law of the place of the plaintiff's injury presumptively governs unless another jurisdiction has a "more significant relationship" to the lawsuit. *See, e.g.*, *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 289 (Ohio 1984). The district court then stated that the parties had failed to "address the 'more significant relationship' test," explained that it was "unaware of any basis for regarding Minnesota as the state with the 'more significant relationship'" to the lawsuit, and applied Ohio substantive law. Then, as relevant here, it found that Axline's common-law claims were not actionable because of the OPLA, so it dismissed them. Finally, it denied Axline's "informal request" for leave to amend because she failed to comply with District of Minnesota Local Rule 15.1, which (as the district court explained) requires a party seeking leave to amend to provide a copy of the proposed amended pleading as well as a redlined version of it showing how it differs from the operative pleading.

Subsequently, Axline formally moved for leave to amend her complaint in order to assert claims under the OPLA. But in doing so she again failed to comply with Local Rule 15.1 by not including a clean copy of the proposed amended pleading. The motion came before a magistrate judge,[3] who recommended denying

---

[3]The Honorable David T. Schultz, United States Magistrate Judge for the District of Minnesota.

it. Axline objected to this recommendation, but the district court overruled her objection and summarily denied her motion. The district court subsequently dismissed her case with prejudice. Axline appeals, challenging the district court's choice-of-law ruling and its denial of her motion for leave to amend.[4]

## II.

We review *de novo* a district court's choice-of-law determination. *Chapman v. Hiland Partners GP Holdings, LLC*, 862 F.3d 1103, 1108 (8th Cir. 2017). Applying Ohio choice-of-law rules, the district court concluded that Ohio substantive law governed Axline's case. On appeal, Axline acknowledges that Ohio choice-of-law rules apply in her case. But now, for the first time, she argues that Ohio choice-of-law rules dictate that Minnesota substantive law governs and that the district court erred in concluding otherwise. Assuming that Axline has not forfeited this argument, *but see Wiser v. Wayne Farms*, 411 F.3d 923, 926 (8th Cir. 2005), we reject her contention on the merits.[5]

In an Ohio choice-of-law analysis, the threshold step is to determine whether a relevant conflict actually exists between Ohio substantive law and the substantive law of another jurisdiction. *See Glidden Co. v. Lumbermens Mut. Cas. Co.*, 861 N.E.2d 109, 115 (Ohio 2006). It is undisputed here that a conflict exists between Ohio and Minnesota substantive law that is relevant to Axline's claims.

---

[4]Axline does not challenge the district court's dismissal of her common-law claims on the basis that the OPLA abrogated them.

[5]Although the district court did not analyze the factors under Ohio's "more significant relationship" test (because they were not argued), Axline asserts on appeal that the "justifications" for applying Minnesota substantive law under those factors are "part of the record." Accordingly, we apply those factors here in light of the undisputed facts in the record. *See Smoky Hills Wind Project II, LLC v. City of Independence*, 889 F.3d 461, 468 (8th Cir. 2018) ("We may affirm the judgment of the district court on any basis disclosed in the record, whether or not the district court agreed with or even addressed that ground." (internal quotation marks omitted)).

Given that a conflict exists, the next step under Ohio choice-of-law rules is to follow the approach laid out in sections 6, 145, and 146 of the *Restatement (Second) of Conflict of Laws* (Am. L. Inst. 1971) for tort cases such as this. *See Morgan*, 474 N.E.2d at 288-89. Under section 146, there is a starting presumption that "the law of the place of the injury controls." *See id.* at 289. In this case, that is Ohio. This presumption then may be rebutted by a showing that "another jurisdiction has a more significant relationship to the lawsuit." *Id.* To determine whether this is so, the court must consider the factors in section 145, which are (1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors under section 6 that the court finds relevant. *Id.* In turn, the factors under section 6 are (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of result; and (7) ease in the determination and application of the law to be applied. *Id.* at 289 n.6.

Thus, there are as many as eleven factors that may be considered in an Ohio choice-of-law analysis. Considering these factors here, we conclude that the district court did not err in deciding that Ohio substantive law governed this case.

The first factor under section 145 is the place of the injury. *Id.* at 289. Here, that place is Ohio. This factor thus favors applying Ohio substantive law.

The second factor under section 145 is the place where the conduct causing the injury occurred. Although Axline concedes that "[a]spects" of this factor "support a connection to each state," she argues that more of these aspects favor applying Minnesota substantive law rather than Ohio substantive law and thus that this factor on the whole favors applying Minnesota substantive law. Even assuming

Axline is right about this factor, that has only a marginal effect on our analysis. In cases where the underlying personal injury occurs in one state but the conduct causing that injury occurs in another, the "law of the state of injury will usually be applied to determine most issues involving the tort," particularly "when the injured person has a settled relationship" to the state of injury, such as by being a resident or citizen of that state. *Restatement (Second) of Conflict of Laws* § 146 cmt. e; *see also In re E.I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 316 F. Supp. 3d 1021, 1025, 1030, 1033-35 (S.D. Ohio 2015) (applying this "guidance" from section 146 comment e to conclude that Ohio substantive law governed under Ohio choice-of-law rules in personal-injury and wrongful-death suits where the place of injury was Ohio but the conduct causing the injury occurred elsewhere). Axline was injured in Ohio, and she is both a resident and citizen of Ohio. Accordingly, even if this factor favors applying Minnesota substantive law, in the circumstances here it carries little weight.

The third factor under section 145 is the domicile, residence, nationality, place of incorporation, and place of business of the parties. Axline's domicile and residence is Ohio. 3M Company is, and Arizant Healthcare was (until it was dissolved in December 2014), incorporated in Delaware. 3M Company has, and Arizant Healthcare had, its principal place of business in Minnesota. As this factor implicates both Ohio and Minnesota, it is neutral. *Cf. Restatement (Second) of Conflict of Laws* § 145 cmt. e (noting that in the tort context "[t]he fact . . . that one of the parties is domiciled or does business in a given state will usually carry little weight of itself").

The fourth factor under section 145 is the place where the relationship, if any, between the two parties is centered. The parties agree that this factor is "not influential" in this case, so it is either neutral or irrelevant.

Moving on to the section 6 factors, we first consider the needs of the interstate system. To the extent Axline makes any argument about this factor,[6] she concedes that "both states have an interest in the manufacture and sale of safe products" and that "[n]either state's interests are impaired or frustrated by application of one [state's] law or the other." This factor is thus, at best for her, either neutral or irrelevant.

Under section 6, we next consider the relevant policies of the forum. Axline does not identify any rules specific to section 6 for ascertaining where the "forum" is, and we are unaware of any, so we presume that the "forum" for section 6 purposes is the "forum" dictated by other applicable legal principles. Axline assumes that Minnesota is the forum because that is where the district court is located, and she argues that relevant Minnesota policies favor applying Minnesota substantive law. But Axline's assumption is mistaken. "Special rules apply in MDL cases as to determining the forum state." *In re Volkswagen & Audi Warranty Extension Litig.*, 692 F.3d 4, 17 (1st Cir. 2012). "In MDL cases, the forum state is typically the state in which the action was initially filed before being transferred to the MDL court." *In re Welding Fume Prods. Liab. Litig.*, 245 F.R.D. 279, 295 n.90 (N.D. Ohio 2007). Granted, Axline filed her complaint directly in the district court, but this was only because of the Direct Filing Order; otherwise, she would have filed her complaint in the Northern District of Ohio, in which case the forum state would have been Ohio. The direct-filing mechanism in MDL litigation is for "bureaucratic convenience" and does not render the state of the MDL court the "forum" in direct-filed actions that would have been brought in another forum but for the direct-filing mechanism. *See Petitta v. 3M Co.*, 999 F.3d 534, 538-39 (8th Cir. 2021). Instead, the forum remains the state where the action would have been brought. *See id.* As Axline alleged in her complaint, that state is Ohio. We thus consider Ohio the forum for purposes of this factor and consider its relevant policies.

---

[6]Axline did not actually discuss in her briefs how the section 6 factors apply under Ohio choice-of-law rules. Instead, she reverted to arguing Minnesota choice-of-law rules that do not correspond directly to the section 6 factors. We nevertheless credit Axline's contentions to the extent that they track the section 6 factors.

Ohio has abrogated most of the claims Axline attempted to pursue in this case, *see* Ohio Rev. Code § 2307.71(B), and partially replaced them with specific statutory causes of action, *see, e.g.*, *id.* §§ 2307.75, 2307.76. Declining to apply Ohio substantive law here would allow Axline to make an end run around Ohio's relevant policies. This factor thus favors applying Ohio substantive law. *Cf. Allison v. ITE Imperial Corp.*, 928 F.2d 137, 139, 143-44 (5th Cir. 1991) (applying the section 6 factors under Mississippi choice-of-law rules and concluding in light of those factors that Tennessee substantive law applied, largely because a Tennessee statute of repose evinced its "strong interest in limiting a manufacturer's exposure" and applying that law would "promote[] important state policies").

The next factor we consider under section 6 is the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue. Axline argues that Minnesota has "strong interests" in the policing of tortious behavior that takes place in Minnesota and in the full compensation of tort victims. Ohio courts recognize that a state in which a manufacturer is incorporated and develops an injury-causing product has an "important policy objective" in seeing its law applied to deter bad acts by those manufacturers. *See White v. Crown Equip. Corp.*, 827 N.E.2d 859, 863 (Ohio Ct. App. 2005). But Ohio courts also recognize that the relative interests of the state where the plaintiff resides and is injured may trump such considerations. *See id.* Thus, even if Minnesota's interest in ensuring full compensation for tort victims is not trumped by other considerations, this factor is, at best for Axline, mixed.

Next under section 6, we consider the protection of justified expectations. To the extent Axline expected Minnesota substantive law to apply in her case, we fail to see how that expectation was justified. Under the Direct Filing Order, the allegations in Axline's complaint dictated that Ohio choice-of-law rules would apply to resolve any dispute about the applicable substantive law in her case. And, if anything, the "presumption" of applying the law of the place of injury under Ohio choice-of-law rules should have led Axline to expect that Ohio substantive law

would govern her case.  *Morgan*, 474 N.E.2d at 288-89.  This factor thus favors applying Ohio substantive law.

Under section 6, we next consider the basic policies underlying the particular field of law.  Axline does not identify what these basic policies are or why they favor applying Minnesota substantive law.  Accordingly, we deem this factor to be, at best for her, either neutral or irrelevant.

The next factor we consider under section 6 is certainty, predictability, and uniformity of result.  Axline argues that "a 'predictable result' is achieved by applying Minnesota [substantive] law because a federal court sitting in diversity usually applies the substantive law of the forum state."  The legal proposition she recites is true but cuts against her.  As discussed above, the "forum state" here is Ohio.  Thus, a predictable result is achieved if Ohio substantive law applies in this case.  *See also Restatement (Second) of Conflict of Laws* § 146 cmt. c (noting that the most predictable result occurs when the law of the state where the injury occurred is applied).  This factor, then, favors applying Ohio substantive law.

Finally, under section 6 we consider ease in the determination and application of the law to be applied.  Given the "presumption" applicable here of applying Ohio substantive law, *see Morgan*, 474 N.E.2d at 288-89, and Axline's seeming concession that Ohio substantive law "could be applied without difficulty" in this case, this factor favors applying Ohio substantive law.

In sum, Axline has not rebutted the presumption that the substantive law of Ohio, the state where she was injured, governs this case.  *See id.* at 289 (applying the law of the place of injury, Kentucky, after applying Ohio choice-of-law rules, even though two factors favored applying Ohio substantive law).  Accordingly, the district court correctly concluded that Ohio substantive law governed this action under Ohio choice-of-law rules.

Axline also argues that the district court abused its discretion in denying her motion for leave to amend her complaint, brought under Federal Rule of Civil Procedure 15(a)(2), so that she could assert claims under the OPLA for negligent failure to warn and design defect. We review the denial of a motion for leave to amend for an abuse of discretion. *In re Target Corp. Sec. Litig.*, 955 F.3d 738, 744 (8th Cir. 2020). We may affirm the denial of a motion for leave to amend "on any ground supported by the record." *Id.* at 745.

The magistrate judge who heard argument on Axline's motion concluded that Axline's motion should be denied. In doing so, he identified a number of reasons that may justify denying leave to amend under Rule 15, including that in moving for leave to amend Axline again had failed to comply with Local Rule 15.1, *see O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 505 (8th Cir. 2009), that Axline unduly delayed in seeking leave to amend, *see Nuevos Destinos, LLC v. Peck*, 999 F.3d 641, 645 n.4 (8th Cir. 2021), and that amendment would have been futile, *see id.*[7] Adopting the magistrate judge's recommendation, the district court summarily denied Axline's motion.

We find no abuse of discretion in this denial. "Although leave to amend shall be freely given when justice so requires, *see* Fed. R. Civ. P. 15(a), plaintiffs do not have an absolute or automatic right to amend." *O'Neil*, 574 F.3d at 505. "A district court does not abuse its discretion in denying leave to amend where a plaintiff has not followed applicable procedural rules." *Id.* Axline twice failed to comply with

---

[7]Although concluding that leave to amend should be denied under Rule 15, the magistrate judge primarily concluded that Rule 16 rather than Rule 15 governed this motion because a scheduling order was in place ostensibly governing Axline's ability to amend, and he found that Axline had not met Rule 16(b)(4)'s good-cause standard for modifying the scheduling order. 3M raises the Rule 16 ruling on appeal as an alternative ground to affirm. We do not reach this issue because we affirm the denial under Rule 15.

Local Rule 15.1, including after the district court explicitly informed her of the local rule's requirements. Her failures in this regard provided sufficient grounds for the district court to deny her motion for leave to amend. *See id.*; *Nuevos Destinos*, 999 F.3d at 645 n.4; *In re Baycol Prods. Litig.*, 732 F.3d 869, 880 n.8 (8th Cir. 2013).

Axline acknowledges that failure to comply with local rules "can be a basis to deny leave to amend," but she suggests that this is not a sufficient basis here because she lacked "notice and opportunity to comply." Not so. Setting aside the fact that it was her counsel's "responsibility to know the local rules" of the district court, *see Harris v. Steelwald Equip. Co.*, 869 F.2d 396, 400 (8th Cir. 1989), the district court explicitly informed her of what that rule required before she filed her formal motion. The district court was within its discretion to deny her motion for leave to amend when thereafter she still failed to follow the rule.

## IV.

For the foregoing reasons, we affirm the district court's orders determining that Ohio substantive law applied and denying Axline's motion for leave to amend.[8]

_____

_____

[8]We deny as moot 3M's pending motion to strike. *See, e.g.*, *Cooper Tire & Rubber Co. v. Nat'l Labor Rels. Bd.*, 866 F.3d 885, 892 n.2 (8th Cir. 2017).