# United States Court of Appeals
## For the Eighth Circuit
_____

No. 25-1618
_____

T&T Management, Inc., a Florida corporation

*Plaintiff - Appellant*

v.

Choice Hotels International, Inc., a Delaware corporation; Sunshine Fund Port
Orange, LLC, Florida limited liability company; Country Inn & Suites by
Radisson, Inc.

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: February 11, 2026
Filed: June 25, 2026
_____

Before COLLOTON, Chief Judge, BENTON and KELLY, Circuit Judges.
_____

BENTON, Circuit Judge.

T&T Management, Inc., sued Choice Hotels International, Inc.; Country Inn
& Suites By Radisson, Inc.; and Sunshine Fund Port Orange, LLC. T&T alleged, in
part, breach of its License Agreement, breach of the implied covenant of good faith

and fair dealing, and tortious inference. The district court[1] dismissed T&T's claims, ruling it failed to state a claim. T&T appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

In 2011, T&T was licensed to operate a Country Inn & Suites hotel in Port Orange, Florida. The License Agreement provided T&T a 15-year license that excluded the franchisor and others from operating hotels using the Country "Marks" within a limited geographic area (the "Protected Area").

In 2016, Radisson bought the Country brand. Radisson then sold the Country brand to Choice in 2022. Choice assumed all the original obligations under the Agreement to T&T. Choice owned 21 hotel brands, including WoodSpring Suites. Before acquiring the Country brand, Choice licensed Sunshine to operate a WoodSpring hotel within the Protected Area—triggering this dispute.

The Agreement states (emphasis added):

1.2 Reservation of Rights and Area of Protection.

(a) For the Term Of the Agreement ("Protected Term") as long as Licensee (i) Opens the Hotel by the dates required in this Agreement; and (ii) continuously Operates the Hotel In compliance with this Agreement, Country will not Operate, or license other Persons to Operate, hotels using the *Marks* within the [Protected Area] . . . .

(b) Notwithstanding the grant of Exclusivity in Section 1.2(a):
. . . .

---

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

(2) Country, its Affiliates, and its ultimate parent corporation, subsidiaries, and all of their respective parents and subsidiaries ("Related Entities"), and *Persons licensed by them, shall have the right, anywhere and anytime, to use any trademarks*, trade dress, trade names, reservation systems, *or franchise systems* that are *acquired by Country*, its Affiliates or Related Entities. In addition, Country, Its Affiliates and Related Entities, and *Persons licensed by them, have the right, anywhere and at any time, to Operate*, and license other Persons to Operate, *hotels using other systems and marks*.

(3) Country's Affiliates and Related Entities also have the right, anywhere and at any time, to own or Operate hotels, using *the System and the Marks*, when (i) that Affiliate or Related Entity purchases, develops or otherwise acquires the hotel, (ii) executes a lease or management agreement, with a guaranteed performance or otherwise, for the hotel; or (iii) acquires an ownership interest in a Person, or its assets, through a purchase, merger, consolidation or otherwise, that owns or operates the hotel.

(c) Country will not allow any hotels using the *Marks* other than those referenced in 1.2(b)(3) to open within the Protected Area until after the expiration or termination of the Protected Term. . . .

The Agreement defines "Marks" as (emphasis added):

The *Primary Marks* and all other trademarks, service marks, trade names, copyrights, insignia, emblems, slogans, logos, commercial symbols, signs, trade dress (including interior and exterior building designs and specifications and the motif, decor, and color combinations), and all other visual identification, whether in English or any other language *by which the System and System Hotels and the related services and products are identified and publicized*, including the good will associated with all of them.

"Primary Mark" means:

> "Country Inn By Carlson," "Country Suites By Carlson" and "Country Inn & Suites By Carlson," but only the one that Is used as part of the Licensed Name.

"System" means (emphasis added):

> The *Marks*, the Confidential and Proprietary System Information and other distinctive elements *developed and owned by, or made available by its Affiliates to Country . . . .*

## II.

According to T&T, Choice's other 21 hotel brands entered the "System" when Choice became the franchisor. T&T believes that "Marks" includes the WoodSpring mark, and thus Choice cannot license it to others within the Protected Area.

T&T sued Choice, Radisson, and Sunshine. T&T alleged that Choice, by licensing the WoodSpring mark to Sunshine within the Protected Area, breached the Agreement and the implied covenant of good faith and fair dealing. T&T alleged that Radisson knew of this license when it sold the Country brand to Choice, causing the same breaches. T&T alleged that Sunshine tortiously interfered with its Agreement and business expectancy.[2]

The Agreement lists Minnesota as the forum, adding that disputes are "governed by the laws . . . of the state in which the Hotel is located." Florida law thus governs the state-law claims.

T&T first sued in Florida. The district court there found the complaint insufficient. After amendments, the district court ruled that Minnesota was the

---

[2]This court need not address any issue about the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, because T&T does not raise this issue on appeal.

-4-

proper forum. In Minnesota, T&T again amended its complaint to reflect its sale of the Country-branded hotel. T&T claimed that the defendants' "improper tortious actions and breach of the parties' agreement" forced the sale, causing financial loss. After submitting its third amended complaint, the district court granted the motion to dismiss for failure to state a claim. The district court also found sua sponte that leave to amend further was unwarranted, dismissing the action with prejudice.

T&T appeals the district court's dismissal of its third amended complaint, and denial of leave to amend further.

This court reviews "*de novo* a district court's decision granting a motion to dismiss for failure to state a claim, accepting as true all factual allegations and viewing them in the light most favorable to the non-moving party." ***Yang v. Robert Half Int'l, Inc.***, 79 F.4th 949, 961–62 (8th Cir. 2023). The plaintiff's complaint must "state a claim to relief that is plausible on its face." ***Ashcroft v. Iqbal***, 556 U.S. 662, 678 (2009), *quoting* ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 570 (2007). "A claim is plausible when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" ***Christopherson v. Bushner***, 33 F.4th 495, 499 (8th Cir. 2022), *quoting* ***Iqbal***, 556 U.S. at 678. While this court must accept the plaintiff's factual allegations as true at this stage, it "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." ***Schulte v. Conopco, Inc.***, 997 F.3d 823, 825 (8th Cir. 2021).

III.

T&T argues that the district court erred in dismissing the breach-of-contract claims. It asserts that Choice's licensing of the WoodSpring mark to Sunshine within the Protected Area, and Radisson's knowledge of this during the sale, constitutes breach. T&T believes that the Agreement's definition of "Marks" and "System" unambiguously includes Choice's other 21 hotel brands.

"Under Florida law, a contract is interpreted in accordance with its plain meaning." *MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.*, 965 F.3d 1210, 1218 (11th Cir. 2020) (citation and quotation omitted). "We must read the contract to give meaning to each and every word it contains, and we avoid treating a word as redundant or mere surplusage 'if any meaning, reasonable and consistent with other parts, can be given to it.'" *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1242 (11th Cir. 2009), *quoting Roberts v. Sarros*, 920 So. 2d 193, 196 (Fla. Dist. Ct. App. 2006). "When the language of a contract is clear and unambiguous, courts must give effect to the contract as written and cannot engage in interpretation or construction as the plain language is the best evidence of the parties' intent." *Talbott v. First Bank Fla., FSB*, 59 So. 3d 243, 245 (Fla. Dist. Ct. App. 2011). If the contract's language is ambiguous, however, then "dismissal under Rule 12(b)(6) is inappropriate." *Tenet Fla., Inc. ex rel. Coral Gables Hosp. v. Glob. Excel Mgmt., Inc.*, No. 18-60580-CIV, 2018 WL 11457395, at *3 (S.D. Fla. Nov. 27, 2018) (citation omitted). "[C]ontractual language is ambiguous only if it is susceptible to more than one *reasonable* interpretation." *BKD Twenty-One Mgmt. Co. v. Delsordo*, 127 So. 3d 527, 530 (Fla. Dist. Ct. App. 2012) (emphasis in original).

The plain, unambiguous language of the Agreement prohibits Choice from licensing the "Marks" within the Protected Area. The Agreement clearly defines "Marks" as the Country Inn & Suites trademark and the other identifiers for the Country System. And, Section 1.2(b)(2) expressly grants Choice the right to license other entities, anywhere and at any time, to: (1) "use any trademarks, trade dress, trade names, reservation systems, or franchise systems that are acquired by [Choice]," and (2) operate "hotels using other systems and marks." WoodSpring is an "other mark" that Choice acquired, outside the Country System. The Agreement thus unambiguously authorized Choice to license the WoodSpring mark within the Protected Area.

T&T believes that the Agreement's definition of "Marks" and "System"—along with its failure to define "marks" and "system"—creates ambiguity. The

Agreement capitalizes "Marks" and "System" to denote that they refer to the Country brand. The Agreement does not define lowercase "marks" and "system," but it uses them to refer to non-Country identifiers and franchise systems. This court will not treat the Agreement's use of capitalization as "redundant or mere surplusage." *See Equity Lifestyle*, 556 F.3d at 1242. "Marks" and "System" refers only to the Country brand.

T&T's broader interpretation of "Marks" and "System" is unreasonable. As defined in the Agreement, "Primary Mark" refers only to the "Country Inn & Suites" trademark. "Marks" refers to that trademark, along with the rest of the identifiers for the Country franchise (e.g., slogans, building designs, and decorations). "Marks" limits itself, and thus the "System," to the identifiers that the consuming public associates with the Country brand. Including the WoodSpring mark in the definition of "Marks" is unreasonable. Consumers do not identify Country-branded hotels through the WoodSpring mark. Because T&T's interpretation is unreasonable, the Agreement's use of "Marks" and "System" is not ambiguous. *See BKD Twenty-One*, 127 So. 3d at 530.

T&T's other arguments require this court to examine extrinsic evidence. This court, however, gives effect to the Agreement's clear and unambiguous language. *See Talbott*, 59 So. 3d at 245; *Dear v. Q Club Hotel, LLC*, 933 F.3d 1286, 1293 (11th Cir. 2019) (stating that this court will not consider "outside evidence or the complex rules of construction" when the contract's language is unambiguous (citation omitted)) (applying Florida law).

Because the Agreement unambiguously permits the franchisor to grant licenses for non-Country-branded hotels within the Protected Area, the district court correctly dismissed T&T's breach-of-contract claims against Choice and Radisson.

IV.

T&T argues that Choice and Radisson breached the implied covenant of good faith and fair dealing—which every Florida contract has. *See Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005). But, because T&T's breach-of-contract claims were properly dismissed, so too were its breach-of-good-faith-and-fair-dealing claims. *See id*. at 1151–52 (stating that a claim for a breach of the implied covenant "cannot be maintained under Florida law in the absence of a breach of an express term of a contract").

V.

T&T argues that the district court erred in dismissing its tortious interference claims against Sunshine. It asserts that Sunshine tortiously interfered with its Agreement, and with its business expectancy.

Sunshine did not interfere with T&T's Agreement with Choice. As discussed, Choice did not breach the Agreement by licensing Sunshine to operate a WoodSpring-branded hotel within the Protected Area. Because there was no breach, T&T cannot plausibly allege Sunshine tortious interfered with the Agreement. *See Al Rushaid Petroleum Inv. Co. v. Siemens Energy Inc.*, 159 F.4th 887, 894 (11th Cir. 2025) (stating that under Florida law, "a prima facie case of tortious interference requires," as an element, "an intentional and unjustified interference with the business relationship or procurement of the contract's breach by the defendant" (quotation omitted)); *Novell v. Bank of Am. Corp.*, No. 14-CV-80672-RLR, 2014 WL 7564678, at *4 (S.D. Fla. Dec. 3, 2014) ("[I]n an action for tortious interference with a contract, a plaintiff must demonstrate there was a breach of contract."); *Treco Int'l S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1288 (S.D. Fla. 2010) (dismissing a tortious-interference-with-contract claim where the plaintiffs did not allege actual procurement of the contract's breach).

Sunshine also did not interfere with T&T's business expectancies.  T&T claims its expectancies are future business with "loyal customers."  It argues that the WoodSpring hotel interfered with this expectancy.  For its claim, T&T must plead a business relationship with identifiable customers that "afford[s] existing or prospective legal rights to the parties and embod[ies] 'an actual and identifiable understanding' that the parties will do business together." *Hill Dermaceuticals, Inc. v. Anthem, Inc.*, 228 F. Supp. 3d 1292, 1301 (M.D. Fla. 2017), *quoting Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994).  T&T, however, does not allege how—absent the WoodSpring hotel's existence—these customers would provide it future business.  T&T's business-expectancy claim thus is purely speculative.  *See Ethan Allen*, 647 So. 2d at 815 ("The mere hope that some of its past customers may choose to buy again cannot be the basis for a tortious interference claim."); *B & D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC*, 758 F. Appx. 785, 791 (11th Cir. 2018) (per curiam) (holding "speculation regarding future sales to past customers" is not enough for a tortious-interference-with-a-business-relationship claim), *quoting Ethan Allen*, 647 So. 2d at 814–15; *McKesson Corp. v. Benzer Pharmacy Holding LLC*, No. 8:20-CV-2186-T-33AAS, 2020 WL 7054683, at *8 (M.D. Fla. Dec. 2, 2020) ("[T]he requirements to state a cause of action for tortious interference with a business expectancy are the same as one for tortious interference with a business relationship.").

The district court correctly dismissed T&T's tortious interference claims.

VI.

The district court set the pleading-amendment deadline for July 23, 2024.  On July 11, T&T—responding to the motion to dismiss—asserted:  that it was "entitled to amend its complaint" to the extent the district court found the factual allegations for certain claims were insufficient; and that amendment would not be futile.  The day of the deadline, T&T moved for a third amended complaint to "merely remove its request for injunctive relief given" its sale of the Country-branded hotel.  The

district court granted this motion to amend. Later, dismissing the third amended complaint, the district court sua sponte—reacting to T&T's previous, general catchall requests to amend—peremptorily stated it "does not find that leave to amend is warranted in this case as the complaint has been amended three times." T&T never moved for a fourth amended complaint before the district court.

T&T argues that, in denying leave to amend further, the district court improperly relied on the number of times it previously amended the complaint. *See Smith v. Chem. Leaman Tank Lines, Inc.*, 285 F.3d 750, 752 (8th Cir. 2002) ("A district court abuses its discretion if it applies the incorrect law."); *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008) (when a motion to amend is filed, a court abuses its discretion denying it without finding "undue delay, bad faith, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment"). Regardless of whether the district court relied on the number of previous amendments, this court may affirm the denial of leave to amend "on any ground supported by the record." *See Axline v. 3M Co.*, 8 F.4th 667, 676 (8th Cir. 2021). The record here is clear: T&T did not act diligently in seeking a fourth amended complaint. *See Cheeks v. Belmar*, 162 F.4th 899, 907 (8th Cir. 2025) (a "party seeking leave to amend after the deadline must first show good cause for the untimely amendment under Rule 16(b)"); *Midwest Med. Sols., LLC v. Exactech U.S., Inc.*, 95 F.4th 604, 607 (8th Cir. 2024) ("The movant's diligence in attempting to meet the case management order's requirements is the 'primary measure' of good cause."). T&T's failure to comply with many procedural rules establishes a lack of diligence. *See Axline*, 8 F.4th at 676 (stating that district courts may deny leave to amend "where a plaintiff has not followed applicable procedural rules"); **Fed. R. Civ. P. 16(b)(4)** ("A schedule may be modified only for good cause and with the judge's consent."); **D. Minn. LR 16.3(b)** (requiring a party seeking to modify a scheduling order to "establish good cause for the proposed modification"); **D. Minn. LR 7.1(b)** (stating motions to amend require the movant to file and serve, e.g.: a motion; a notice of hearing; a memorandum of law; and a proposed order); **D. Minn. LR 15.1(b)** ("Any

motion to amend a pleading must be accompanied by:  (1) a copy of the proposed amended pleading, and (2) a version of the proposed amended pleading . . . .").

The district court did not err in denying T&T leave to amend its complaint further.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____

-11-